IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| EMG TECHNOLOGY, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>THE VANGUARD GROUP, INC.,<br><br>     Defendant. | CIV. A. NO. 6:12-cv-543-MHS<br>(LEAD CASE) |
| EMG TECHNOLOGY, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>THE TJX COMPANIES, INC.,<br><br>     Defendant. | CIV. A. NO. 6:12-cv-904-MHS<br>(CONSOLIDATED CASE) |
| EMG TECHNOLOGY, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>J.C. PENNEY CORP., INC.,<br><br>     Defendant. | CIV. A. NO. 6:12-cv-905-MHS<br>(CONSOLIDATED CASE) |

|                                   |                                                     |
|-----------------------------------|-----------------------------------------------------|
| EMG TECHNOLOGY, LLC,              |                                                     |
|     Plaintiff, |                                                     |
| v.                                | CIV. A. NO. 6:13-cv-029-MHS (CONSOLIDATED CASE)     |
| COACH, INC.,                      |                                                     |
|     Defendant. |                                                     |
| EMG TECHNOLOGY, LLC,              |                                                     |
|     Plaintiff, |                                                     |
| v.                                | CIV. A. NO. 6:13-cv-31-MHS (CONSOLIDATED CASE)      |
| WILLIAMS-SONOMA, INC.,            |                                                     |
|     Defendant. |                                                     |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
OF INVALIDITY FOR INDEFINITENESS**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     STATEMENT OF ISSUE TO BE DECIDED.................................................................. 2

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................... 2

   A.   The '196 Patent's Description ......................................................................................... 2

   B.   The '196 Patent's Claims................................................................................................ 4

   C.   On Three Separate Occasions EMG Strategically Abandoned Patent Applications After
   The PTO Rejected Claims As Indefinite For Reciting A "Simplified Navigation Interface" .... 4

      1.   The '164 application was abandoned after the term "simplified navigation interface"
      was rejected as indefinite ..................................................................................................... 4

      2.   The '244 application was abandoned after the term "simplified navigation interface"
      was rejected to as indefinite................................................................................................. 5

      3.   The '953 application was abandoned after the term "simplified navigation interface"
      was rejected as indefinite ..................................................................................................... 6

   D.   No Inference Can Be Made From The B.P.A.I.'s Failure To Issue New Grounds For
   Rejection On The Parent '845 Patent....................................................................................... 6

IV.     GOVERNING LAW....................................................................................................... 7

V.      ARGUMENT .................................................................................................................. 9

   A.   The Term "Simplified" Lacks Any Boundaries In View Of The Claim Language,
   Specification, and Prosecution History.................................................................................. 10

   B.   The Term "Simplified" Fails To Clearly Distinguish What Is Claimed From What Is
   Foreclosed From Future Enterprise ....................................................................................... 15

   C.   The '196 Patent Fails To Teach One Skilled In The Art From Knowing Which Use Of An
   Accused Product Is Within The Scope Of The Claims........................................................... 15

   D.   Whether A "Navigation Interface" Is Simplified Depends Solely On The Subjective
   Opinion Of A Consumer Purportedly Practicing The Invention ............................................ 16

VI.     CONCLUSION.............................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
  616 F.3d 1249 (Fed. Cir. 2010) ............................................................................... 7

*Bicon, Inc. v. Straumann Co.*,
  441  F.3d 945 (Fed. Cir. 2006) ................................................................................. 7

*Crane Co. v. Sandenvendo Am., Inc.*,
  2009 WL 1586704 (E.D. Tex. Jun. 5, 2009) ....................................................... 9, 18

*Datamize, LLC v. Plumtree Software, Inc.*,
  417 F.3d 1342 (Fed. Cir. 2005) ...................................................................... passim

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*,
  349 F.3d 1373 (Fed. Cir. 2003) ............................................................................... 8

*Halliburton Energy Servs., Inc. v. M-I LLC*,
  514 F.3d 1244 (Fed. Cir. 2008) ...................................................................... passim

*Hearing Components, Inc. v. Shure, Inc*,
  600 F.3d 1357 (Fed. Cir. 2010) ............................................................................. 15

*STX, Inc. v. Brine, Inc.*,
  37 F. Supp. 2d 740 (D. Md. 1999) ........................................................................... 9

*United Carbon Co. v. Binney & Smith Co.*,
  317 U.S. 228 (1942) ............................................................................... 8, 10, 16

**Statutes**

35 U.S.C. § 112 ............................................................................................ passim

**Other Authorities**

MPEP 1213.02, 8th ed., rev. 2 (May 2004) ................................................................. 7

## I.   INTRODUCTION

U.S. Pat. No. 7,441,196 ("the '196 patent") presents the public with the unsolvable dilemma of knowing when a website satisfies the claimed requirement of having a navigational interface that is "simplified."  Each claim includes the "simplified" navigation interface limitation.  Yet, the intrinsic record provides no objective criteria for determining whether a navigation interface is "simplified."  In fact, the intrinsic record shows that making such a determination varies greatly from one context to another.  That is why two different patent examiners on three separate occasions rejected claims reciting the limitation "simplified navigation interface" as unpatentable for indefiniteness.  The Board of Patent Appeals also noted that "simplified navigation is not specifically defined."

The facially subjective nature of "simplified," and the '196 patent's lack of objective criteria for determining whether an interface is or is not "simplified" renders all claims invalid as indefinite pursuant to 35 U.S.C. § 112, ¶ 2.  To hold otherwise would reward EMG for its strategic pursuit of ambiguous claims by shopping for an examiner through three patent applications.  By failing to specify what might make an interface "simplified," the '196 patent prevents the named Defendants[1]—and the public—from knowing whether their websites might infringe the '196 patent.  Under Section 112 of the Patent Act, claims must particularly point out and distinctly claim the alleged invention.  This insures that the public is on notice of what constitutes patent infringement and encourages them to develop technology that falls outside the claimed scope of the '196 patent.  Absent such particularity, patent claims leave the public in a "zone of uncertainty" and hamper both commerce and innovation.  For this reason, such claims are held invalid.  Both because the term "simplified" is inherently subjective and because

---

[1] Each of the named defendants -- The Vanguard Group, Inc., The TJX Companies, Inc., J.C. Penney Corp., Inc., Coach, Inc., and Williams-Sonoma, Inc. -- joins in this motion.

whether a navigational interface is "simplified" may vary from one context to another, the asserted claims should be held invalid as indefinite.

## II.     STATEMENT OF ISSUE TO BE DECIDED

Whether  all claims of the '196 patent are invalid as indefinite under Title 35, Section 112, Second Paragraph, due to each claim's use of the subjective and context-dependent term "simplified"?

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.     The '196 Patent's Description

The '196 patent purports to set out "[a] simplified system for navigation of the internet" that allows greater ease of access on displays, including displays other than "the 'traditional' personal computer (PC)." (Ex. 2 at 2:26-30.[2])  According to the '196 patent, the web surfing experience on devices such as large screen televisions was "poor, inasmuch as the web content is illegible and/or unnegotiable, unless you happen to be sitting very close to the television."  (*Id.* at 1:31-35.)  According to the '196 patent, the simplified navigation *system* is provided through a "sister site" and may take the form of "matrix navigation."  (*Id.* at 2:49-51 ("As used herein, 'sister site' is deemed to mean a site that provides for navigation of the site using a simplified navigation system, such as matrix navigation . . . .").)

Against this backdrop of "simplified" navigation through a sister site, the '196 patent also discusses an "interface" with a "screen divided into a plurality of cells."  (Ex. 2 at 7:66-67.)  An exemplary "interface of one embodiment of the invention" shows a screen divided into "fifteen cells that represent navigation options and one messaging cell for displaying messages from the

---

[2] All cited exhibits are attached to the accompanying Declaration of Felisa L. Leisinger. (Ex. 1.)

server, the progress or status bar, and a title block."  (*Id.* at 7:66-8:3; *see also* FIG. 8.)  This

appears in FIG. 8 of the '196 patent:



FIG. 8

The '196 patent does not define "simplified" interface.  For example, the '196 patent does

not specify a minimum or maximum number of cells that must be included in the "simplified"

interface.  (*See id.* 7:65-8:17.)  The '196 patent does not specify the minimum or maximum size

of the cells for a given interface.  (*Id.* at 8:51-53 ("it is not necessary that all layers of the matrix

have the same number of cells, nor is it required that all cells have the same size.").)  The '196

patent explicitly removes any limits on the number of links within a given cell in an interface.

(*Id.* at 8:31-33 ("the number of links within such a cell may be *arbitrarily* large.") (emphasis

added).)  The '196 patent does not specify the minimum or maximum number of layers that must

be included in the "simplified" interface.  (*Id.*)  The '196 patent does not specify the metes and

bounds of the interface's input device.  (*Id.* at 8:14-17 (explaining the '196 patent "is designed to

be fully accessible . . . from a key pad," or by using "a mouse or other pointer device.").)

The '196 patent does not specify any requirements for allocation or arrangement of an interface's

real estate.  (*Id.* at 10:5-8 (referring to Fig. 14, "In this embodiment, the matrix occupies only a

3

portion of the screen real estate.  The remaining real estate may be occupied by content, a zoom

of the focus cell, or advertising.").)

### B.     The '196 Patent's Claims

A "simplified navigation *interface*" appears in each of the claims. (*E.g.*, Ex. 2, 14:63

(claim 58) (emphasis added).)  Rather than referring to a "navigation *system*," as discussed in the

specification, the claims call for a "navigation *interface*" that must be "simplified."  (*Id.*)  Similar

to the '196 patent's specification, as described in Section A, the claims place no limit on the

amount of the original web page's content that is or is not displayed on the interface. (*See id.*)

The interface could display a small fraction of the original site's content, the entirety of that

content, or even add content.  (*Id.*)  While the claims call for "a plurality of cells" and "content

formatted to be displayed in one or more of the plurality of cells," the claims place no limit on

the number of cells or the amount of content displayed in any given cell.  (*Id.*)

### C.     On Three Separate Occasions EMG Strategically Abandoned Patent Applications After The PTO Rejected Claims As Indefinite For Reciting A "Simplified Navigation Interface"

On three separate occasions, and three separate applications, PTO examiners rejected

EMG's pending claims in as indefinite for their use of the term "simplified navigation interface."

In response—on all three occasions—EMG abandoned this claim language, either canceling or

amending claims, or abandoning those applications altogether.  EMG's selective pursuit of its

applications is noteworthy.

### 1.     The '164 application was abandoned after the term "simplified navigation interface" was rejected as indefinite

EMG filed U.S. Patent Application 10/757,164 ("'164 application" (Ex. 3)) on January

13, 2004.  Claim 10 of the '164 application recited "a *simplified navigation interface* for web

content on a television."  (*Id.* at 46 (emphasis added).)

In his first Office Action, Examiner Corbett Coburn objected to claim 10's recitation of "simplified navigation interface" and invited EMG to "correct" the claims reciting this term: "It is unclear how this is simplified.  Simplified compared to what?  Appropriate correction is required."  (Ex. 4 at 2.)  In response, EMG disagreed with the Examiner and refused to amend the claim. (Ex. 5 at 4.)  On December 2, 2004, Examiner Coburn issued a final rejection of claim 10 as indefinite.  (Ex. 6 at 2.)  Examiner Coburn's rejection explained, "In fact [there] is nothing in the claims, specification, or arguments [to] explain just how this navigation interface is 'simplified.'"  (*Id.* at 3.)  EMG subsequently acknowledged this rejection's propriety by amending the claims to remove the subjective and context-dependent term "simplified:"

> The Examiner has rejected claim 10 under 35 U.S.C. § 112, first paragraph and second paragraph, as being unenabled and indefinite.  Specifically, the Examiner has objected to the language "simplified navigation interface."  Applicant has cancelled claim 10 and amended claim 9 such that the term "simplified navigation interface" is not utilized. Accordingly, these rejections are now moot.

(Ex. 7 at 4.)

## 2.     The '244 application was abandoned after the term "simplified navigation interface" was rejected to as indefinite

EMG filed U.S. Patent Application 11/266,244 ("'244 application" (Ex. 8)) on November 4, 2005.  The '244 application is part of the same family as the '164 application.  Claim 10 of the '244 application recited "*a simplified navigation interface* for web content on a television." (*Id.* at 46 (emphasis added).)

On June 11, 2007, Examiner Coburn rejected the claim as indefinite using language almost identical to that used nearly three years earlier:

> There are hundreds - possibly thousands - of ways to "simplify" a web browser compared to Microsoft Internet Explorer.  Applicant's claims fail to delineate which of these "simplifications" Applicant intends to claim as his own.  Thus the metes and bounds of Applicant's claim are unclear.

5

(Ex. 9 at 3.)  Upon receiving this rejection, EMG once again ceased pursuit of the pending claim

and abandoned the application.  (Ex. 10.)

### 3. The '953 application was abandoned after the term "simplified navigation interface" was rejected as indefinite

EMG filed U.S. Patent Application 10/762,953 ("'953 application" (Ex. 11.)) on January

21, 2004.  The patent-in-suit, the '196 patent, and the '953 application are related because they

both claim priority to U.S. Patent 7,020,845.  Claims 1 and 5 of the '953 application each recited

a "simplified navigation interface."  For example, claim 1 recited "providing *a simplified*

*navigation interface* comprising a set of navigation options through a television channel."  (*Id.* at

19 (emphasis added).)  The application was pending before Examiner Andrew Belousov, who

rejected claims 1 and 5 as indefinite:  "Claims' [sic] 1 and 5 use of the phrase 'simplified'

renders the claim indefinite because *a clear baseline to determine what user interface is*

*'simplified' is missing.*"  (Ex. 12 at 2 (emphasis added).)  Although this rejection was non-final,

EMG again ceased pursuit of the claims and again abandoned the application.  (Ex. 12.)

### D. No Inference Can Be Made From The B.P.A.I.'s Failure To Issue New Grounds For Rejection On The Parent '845 Patent

During prosecution of the application that ultimately led to the parent '845 patent, EMG

appealed an examiner's § 103 rejection to the Board of Patent Appeals and Interferences

("BPAI").  (Ex. 14 at 6.)  EMG *did not* list any § 112 issues, such as indefiniteness, in its

statement of "issues involved in this Appeal."  (*Id.*)  Instead, the Appeal was directed to

obviousness issues in light of certain prior art references.  (*Id.*)  As such, the BPAI did not

address indefiniteness in its decision.  (Ex. 15.)

The claims on appeal before the BPAI recited the phrase "simplified navigation interface,"

but the BPAI relied upon other claim language in resolving the issues before it.  (*Id.* at 12

(emphasis added); *see also id.* at 12-13 ("[T]he examiner . . . has failed to fully appreciate the

requirement of the claims that the <u>sister site</u> provides the simplified navigation interface for the <u>web page</u>, which is not taught or suggested by [prior art references] Dolan and Arora.")
(emphasis in original).)  The BPAI did not rule on whether "simplified" was appropriately defined in the '196 patent because it was not asked to.  The BPAI did note, in *dicta*, that "while a sister site provides simplified navigation, that simplified navigation is not specifically defined, and we consider the language quite broad; i.e., *simplified compared to what*?"  (*Id.* at 9 (emphasis added).)  No significance can be attributed to the BPAI's failure to issue a new rejection because the BPAI is not required to issue new rejections.  (Ex. 16, MPEP 1213.02, 8th ed., rev. 2 (May 2004) ("Since the exercise of authority under 37 CFR 41.50(b) is discretionary, *no inference should be drawn from a failure to exercise that discretion*.") (emphasis added).)

## IV.    GOVERNING LAW

Claim language is indefinite, rendering the claim invalid, if it is proved by clear and convincing evidence that one skilled in the art cannot "discern the boundaries of the claim based on the claim language, the specification, and the prosecution history."  *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008).   A claim is indefinite when a person of ordinary skill in the art cannot determine a "meaningfully precise claim scope."  *Id*. at 1251.  "Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims." *Id.* at 1249.  Each claim limitation is a separate requirement of the claimed invention with a separate meaning and must be treated as such.  *See, e.g.*, *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) ("Claims must be 'interpreted with an eye toward giving effect to all terms in the claim.'") (quoting *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006)).

The Supreme Court warned a "zone of uncertainty" is created by a failure to satisfy Section 112's requirement:

> The statutory requirement of particularity and distinctness in claims is met only when they clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise.  A zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims would discourage invention only a little less than unequivocal foreclosure of the field.

*United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236 (1942) (unanimous).  The Federal Circuit has established two related, but independent, grounds under which claim limitations may be held indefinite.

First, a term is indefinite if one skilled in the art would not know from one use to the next whether the accused product was within the scope of the claims because outside factors affect whether the limitation is met.  *See Halliburton*, 514 F.3d at 1254-55.  In addition to holding the claim limitation "fragile gel" indefinite because too many factors effectuated a "fragile gel," the court also held that the term was indefinite because a skilled artisan "would not know from one well to the next whether a certain drilling fluid was within the scope of the claims because a wide variety of factors could affect adequacy."  *Id*. at 1253-55. To construe a claim term such that a product "might infringe or not depending on its usage in changing circumstances" is the "epitome of indefiniteness." *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003).

Second, claim language that "depend[s] solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention" is indefinite.  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005).  When a subjective claim term is used, "[s]ome objective standard *must* be provided in order to allow the public to determine the

8

scope of the claimed invention." *Id.* (emphasis added).  In *Datamize*, the Federal Circuit ruled that a claim directed to an electronic kiosk system with an "aesthetically pleasing" user interface was invalid as indefinite.  *Id.* at 1356.  The court held that neither the claim language nor the specification provided an "*objective standard . . .* in order to allow the public to determine the scope" of the term "aesthetically pleasing." *Id.* at 1350 (emphasis added).  Thus, a claim term cannot be based on a subjective construction that "would depend on the unpredictable vagaries of any one person's opinion." *Id.*; *see also Crane Co. v. Sandenvendo Am., Inc.*, No. 2:07-cv-42-CE, 2009 WL 1586704, at * 13 (E.D. Tex. Jun. 5, 2009) ("rapidly").  Likewise, in *STX, Inc. v. Brine, Inc.*, "improved handling and playing characteristics" was found to be indefinite where the terms were based on the subjective view of an individual.  *See, e.g.*, 37 F. Supp. 2d 740, 746 (D. Md. 1999).  In *STX,* the patent-in-suit claimed a lacrosse stick with "improved handling and playing characteristics."  *Id.* at 746.  The district court ruled that the term was subjective because if one skilled in the art attempted to determine the scope of the invention, he would "find himself imprisoned in a 'zone of uncertainty.'" *Id.* at 755.  The *STX* court commented that the notion that a third party user (a lacrosse player) would have to use a product to determine whether it embodied the subjective claim limitation was not acceptable and was "repugnant to long-standing principles of patent jurisprudence." *Id.* 755.

## V.     ARGUMENT

All of EMG's claims are insolubly ambiguous and therefore invalid as indefinite pursuant to 35 U.S.C. § 112, ¶ 2.  The claim language requiring an interface that is "simplified":  (A) lacks any boundaries in view of the claim language, the specification, and the prosecution history, *Halliburton*, 514 F.3d at 1253-54; (B) fails to clearly distinguish what is claimed from what is foreclosed from future enterprise, *United Carbon Co.*, 317 U.S. at 236 (1942); (C) prevents one

skilled in the art from knowing which use of an accused product is within the scope of the claims, *Halliburton*, 514 F.3d at 1254; and (D) depends solely on the subjective opinion of a particular individual purportedly practicing the invention, *Datamize*, 417 F.3d at 1350.  Thus, as was held by two different patent examiners on three occasions, the term should be held indefinite.  (Ex. 6 at 2; Ex. 9 at 3; Ex. 12 at 2.)

### A.   The Term "Simplified" Lacks Any Boundaries In View Of The Claim Language, Specification, and Prosecution History

The '196 patent describes the claimed "interface" as having an "arbitrarily large" number of variables (such as number of cells, links, and images, and amount of content), yet provides the skilled artisan with no basis on which to evaluate what combination of variables might make an interface "simplified."  (*E.g.,* Ex. 2, 7:65-8:17, 8:31-33, 8:51-53, and 10:5-6.)

While it is true that Claim 1 recites the limitation that the "sister site" can include "a portion or a whole of [the] content of the web page reformatted to be displayed and navigable," the '196 patent places no restriction that the content to be displayed must only be content that is available on the original web page. (Ex. 2, *cf.* 10:46-48 (placing no limitation on the source of the "next deeper layer") *with* 11:28-40 (limiting the "on-line content" to be "reformatted from a web page".))  Therefore, a sister site may include "a portion" of the original website, but may also include all of the original website or entirely new content.

And, while it is true that Claim 1 limits the content of the "simplified navigation interface" to display "in a form of a two-dimensional layer of cells," the '196 patent allows content segmentation by either "area or content." (Ex. 2, 4:60-61.) Additionally, each region of the matrix "may contain one or more links and/or some amount of content." (Ex. 2, 4:61-62.) So, for even one original web page, "[t]here are hundreds—possibly thousands—of ways to "simplify" a web browser." (Ex. 9 at 3.).

It is also true the '196 patent states the "simplified navigation interface" displays "the two dimensional layer in a form of a navigation matrix;" however, there is no limit to the dimensions of the matrix. (Ex. 2, 10:32-33.)  The "simplified" navigation matrix could be ten cells across and ten cells down, as depicted in the below demonstrative:



The "simplified" navigation matrix could also be twenty cells across and fifty cells down, as depicted in the below demonstrative:



Whether either the ten-by-ten or the twenty-by-fifty matrices depicted above are "simplified" is an inherently subjective determination, for which the '196 patent offers no guidance.  The '196 patent states that "each cell is a division of a screen and exclusive to a separate single navigation option associated with a specific unique input." (Ex. 2, 10:35-37.) However, this limitation addresses the act of *navigation*, not the actual interface that is meant to be "simplified." The '196 patent fails to provide guidelines for whether a 1,000 cell matrix (twenty-by-fifty cells) qualifies as a "simplified navigation interface."[3]

There is no clear line or objective guidance provided by the '196 patent that would allow an alleged infringer to determine whether a given interface is complicated enough to not be "simplified."  With limitless options of which content, if any, to include and how to arrange it, there is no "meaningfully precise claim scope."  *Halliburton Energy Servs.*, 514 F.3d at 1251.

---

[3] Indeed, in its opening claim construction brief (Dkt. No. 138), EMG argued that the matrix can take any form and does not need to be rectangular, (*id*. at 28), adding more ambiguity.

"Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims." *Id.* at 1249.  Thus, the '196 patent teaches a limitless number and type of interfaces, each of which could conceivably include thousands of cells of varying sizes, each cell with an arbitrarily large number of links, with an indeterminate allocation of content to the various cells. Based on the description in the '196 patent, two different "simplified" interfaces might appear as follows:



Or, as follows:



Because the '196 patent lacks any meaningfully precise claim scope there are infinite possibilities of what a "simplified navigation interface" could look like. Therefore, the claims of the '196 patent are all invalid for indefiniteness. *See Halliburton*, 514 F.3d at 1253-54 ("While patentees are allowed to claim their inventions broadly, they must do so in a way that distinctly identifies the boundaries of their claims. . . . adopting the broadest possible construction could retard innovation because cautious competitors may steer too far around that which [was] actually invented.").

This case is distinguished from *Hearing Components, Inc. v. Shure, Inc.*,  600 F.3d 1357, 136-671 (Fed. Cir. 2010) (overturning a district court's ruling that a patent was indefinite because the specification explained the at-issue phrase and the specification distinguished the invention over prior art).   In this case, there is no explanation in the '196 patent's specification that enables a person of ordinary skill in the art to sufficiently understand what is meant by "simplified navigation interface."  Section III.A, *supra* 2.  The specification does not limit: (1) the content from the website that can be displayed, (2) the number of cells that can be displayed, (3) the number of matrix layers that a user can drill down into, (4) the number of links that can be displayed in a cell, or (5) the ability to scroll.  *Id.*  As a whole, these boundless features fail to explain how the asserted invention provides a "simplified navigation interface" in comparison to other websites such as the website illustrated in Figure 2 of the '196 patent.  If anything, and in contrast to the specification at issue in *Hearing Components*, the '196 patent specification actually describes a navigation interface that is similar to, if not more complicated, than prior art websites.

**B.     The Term "Simplified" Fails To Clearly Distinguish What Is Claimed From What Is Foreclosed From Future Enterprise**

The '196 patent's failure to clearly distinguish what is claimed from what is not claimed creates a "zone of uncertainty" about what will actually embody a "simplified navigation interface." The specification suggests that any type of navigation input is contemplated in the '196 patent.  For example, the '196 patent contemplates input from any type of pointer device, but also input that doesn't require a "pointer."   (Ex. 2, *cf.* 8:14-17 (explaining the '196 patent "is designed to be fully accessible . . . from a key pad," using "a mouse or other pointer device.") *with* 9:28-31 ("In some embodiments the form can be filled in using keyboard input. In other embodiments, the speech to text capabilities of the terminal will permit the user to fill out the electronic purchase form orally.").)  There is no limit to the type of input device or input method that is contemplated in the '196 patent.  The '196 patent also fails to specify exactly what content must be used in the sister site; for example, it does not foreclose the possibility of adding content not found on the original site. (*E.g.*, Ex. 2, 14:63 (claim 58).) Because there is no clearly distinguished boundary of what is foreclosed from future enterprise as an infringing "interface," the '196 patent should be found invalid. *United Carbon Co.*, 317 U.S. at 236 (1942).

**C.     The '196 Patent Fails To Teach One Skilled In The Art From Knowing Which Use Of An Accused Product Is Within The Scope Of The Claims**

The '196 patent's specification suggests that whether an interface is simplified could depend upon the display type on which it appears, *e.g.*, a consumer might consider the same interface to be complicated if it appeared on a cell phone but simplified if viewed on another device such as a large-screen television.  (Ex. 2 at 2:36-38.)  For example, a ten cell across and ten cell down display matrix might look simplified on a large-screen television but might be too complex on a cell phone screen.  This is particularly important because the type of display on which an interface appears depends largely on consumer actions and falls outside the control of

15

an alleged infringer.  *See Halliburton*, 514 F.3d at 1254 ("[U]nder Halliburton's proposed

construction in this case, an artisan would not know from one well to the next whether a certain

drilling fluid was within the scope of the claims because a wide variety of factors could affect

adequacy."); *see also STX, Inc.*, 37 F.Supp. 2d 755 (explaining that requiring a consumer to use a

product to determine whether the product embodied the subjective claim limitation was not

acceptable and was "repugnant to long-standing principles of patent jurisprudence.").

### D.  Whether A "Navigation Interface" Is Simplified Depends Solely On The Subjective Opinion Of A Consumer Purportedly Practicing The Invention

The '196 patent provides no objective criteria for determining if a "navigation interface"

is sufficiently simplified.  *Datamize*, 417 F.3d at 1350 (explaining that a claim's scope cannot

depend solely on the unrestrained, subjective opinion of a particular individual purported to be

practicing the invention). When comparing a ten-by-ten matrix on a cell phone screen with the

same on a large-screen television, even though the two devices are displaying the same "sister

site," it is unclear which interface is "simplified," if both are simplified, or if neither is.

Additionally, it remains unclear whether the interface must be simplified from the consumer's or

the company's view. S*ee STX, Inc.*, 37 F.Supp. 2d 755.

There is no objective criteria provided to determine how a "sister site" is "simplified" as

compared to the original webpage. As an example, navigation through the Macys.com website to

"Men's Pants" takes two steps.



On the www.Macys.com website, a consumer only has to hover the mouse over the "Men" category and then click "Pants." However, when navigating the Macys.com "sister site," m.macys.com, navigating to "Men's Pants" requires three clicks.



From left to right, on the m.Macys.com mobile website, the consumer must first click "Shop by Category," then click "Men," then click "Pants."  Based at least upon the number of clicks, the "simplified site" is the original site, not the mobile site, because a consumer can navigate to its web page destination more quickly, executing fewer steps, on the original site.

The '196 patent fails to offer any guidance as to the appropriate indicia of simplification. Consumers purported to be practicing the invention have no way of knowing whether their actions infringe the '196 patent without relying upon their own subjective determinations for what "simplified" is, as noted in the PTO's final rejection of the '164 application:

> Is it simplified because it has fewer buttons?  Or maybe because the fonts are easier to read.  Or perhaps it is simplified because it is has hotkeys that are easier to remember.  There are hundreds - possibly thousands - of ways to "simplify" a web browser . . . . **Applicant's claims fail to delineate which of these "simplifications" Applicant intends to claim as his own.  Thus the metes and bounds of Applicant's claim are unclear.**

(Ex. 6 at 3 (emphasis added).)

As with the term "rapidly" in the *Crane* decision, the '196 patent lacks a "comparison method or a quantifiable method for measuring" whether an interface is "simplified." 2009 WL 1586704, at *13. And such a determination "is entirely subjective and is judged purely from the consumer's standpoint." *Id.*  This lack of an objective standard prevents the public from determining the scope of the claimed invention and renders the asserted claims indefinite and, therefore, invalid. *Datamize*, 417 F.3d at 1350 ("The scope of claim language cannot depend solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention.  Some objective standard must be provided in order to allow the public to determine the scope of the claimed invention.") (citations omitted).[4]

The '196 patent's specification contains no "objective anchor" to allow a person having ordinary skill in the art to determine whether an interface is "simplified" and actually suggests

---

[4] EMG's claim construction position confirms this ambiguity.  While maintaining that simplified navigation interface" is indefinite, Defendant Coach, Inc. argued it cannot encompass "links between pages" or mere "prioritization."  (Dkt. No. 140 at 7-11.)  Despite its prosecution disclaimers, EMG argued both are simplified navigation. (Dkt. No. 138 at 15-17.) Thus, given EMG's interpretation, there is no way to know either what simplified navigation is, or what it is not.

that the allegedly inventive interface could encompass a limitless number and type of interfaces. *Datamize*, 417 F.3d at 1347.  For example, as described in the '196 patent and illustrated above in Section III.A, an interface could include thousands of cells of varying sizes, each with an arbitrarily large number of links, with an indeterminate allocation of content to the various cells. Nothing in the '196 patent informs a skilled artisan on what number of cells, links, images, and content might lead to the creation of a "simplified" interface.  This limitless number of choices and lack of objective criteria leaves Defendants and the public in a "zone of uncertainty" as to what makes an interface "simplified" and fails Section 112, second paragraph's purpose of "adequately notif[ying] the public of the patentee's right to exclude."  *Datamize*, 417 F.3d at 1347.  As the BPAI noted, "while a sister site provides simplified navigation, that simplified navigation is not specifically defined, and we consider the language quite broad; i.e., *simplified compared to what?*"  (Ex. 15 at 9 (emphasis added).)

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court hold that all claims of the '196 patent are invalid as indefinite under 35 U.S.C. § 112, ¶ 2 for their recitation of the subjective and context-dependent term "simplified."

Dated:  October 25, 2013                      Respectfully submitted,

*/s/ Timothy J. Carroll*

Timothy J. Carroll
PERKINS COIE LLP
131 S. Dearborn Street
Suite 1700
Chicago, IL 60603
Tel: 312.324.8400
Fax: 312.324.9400
tcarroll@perkinscoie.com

Shannon Dacus
Texas Bar No. 00791004
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
903-705-1117 (phone & fax)
sdacus@dacusfirm.com

ATTORNEYS FOR DEFENDANT
THE VANGUARD GROUP, INC.

*/s/ Michael C. Smith*

R. David Donoghue
Anthony J. Fuga
Felisa L. Leisinger
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th floor
Chicago, IL 60603
Tel: (312) 263-3600
Fax: (312)578-6666
david.donoghue@hklaw.com
anthony.fuga@hklaw.com
felisa.leisinger@hklaw.com

Michael C. Smith
State Bar Card No. 18650410
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
113 E. Austin Street
Marshall, TX 75671
(903) 938-8900 (t)
(972) 767-4620 (f)
michaelsmith@siebman.com

ATTORNEYS FOR DEFENDANT
THE TJX COMPANIES, INC.

*/s/ Diane K. Lettelleir*

Diane K. Lettelleir
Texas Bar No. 12241525
J.C. Penney Corporation, Inc.
6501 Legacy Drive (MS 1122)
Plano, Texas 75024
Tel: (972) 431-5012

20

Fax: (972) 531-5012
dlettell@jcpenney.com

ATTORNEYS FOR DEFENDANT
J.C. PENNEY CORPORATION, INC.

*/s/ Wendell W. Harris*

Andrew P. Zappia
Wendell W. Harris
LECLAIRRYAN, A Professional Corporation
70 Linden Oaks, Suite 210
Rochester, New York 14625
Tel:  585-270-2100
Fax:  585-270-2179
Andrew.Zappia@leclairryan.com

J. Thad Heartfield
State Bar No. 09346800
thad@jth-law.com
M. Dru Montgomery
State Bar No. 24010800
dru@jth-law.com
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706
Tel:  409-866-3318
Fax:  409-866-5789

ATTORNEYS FOR DEFENDANT
COACH, INC.

*/s/ James G. Gilliland, Jr.*

James G. Gilliland, Jr.
Robert D. Tadlock
KILPATRICK  TOWNSEND & STOCKTON , LLP
1080 Marsh Road
Menlo Park, CA 94025
Tel: 415-576-0200
Fax: 415-576-0300
jgilliland@ kilpatricktownsend.com
rtadlock@kilpatricktownsend.com

ATTORNEYS FOR DEFENDANTS
WILLIAMS-SONOMA, INC., POTTERY BARN

21

INC., POTTERY BARN TEEN INC., POTTERY
BARN KIDS INC., AND WEST ELM, INC.

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and the Local Rules, I hereby certify

that all counsel of record who have appeared in this case are being served today with a copy of

the foregoing via the Court's ECF/CM System.

Dated: October 25, 2013                          /s/ *Michael C. Smith*